IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**WATSON CONSTRUCTION COMPANY,**

    Plaintiff,

v.                                      CASE NO. 1:05-cv-00094-SPM-AK

**CITY OF GAINESVILLE,**

    Defendant.
_____/

## O R D E R

This matter is before the Court on Defendant's Motion to Compel Discovery. (Doc. 56). Plaintiff has responded. (Doc. 69). The Court herein grants the motion in part and denies it in part as follows.

1. <u>Documents considered by Plaintiff's expert, Dr. DePew, in forming his opinion</u> (Dep. Exhibits 331 and 355).

    Dr. DePew was deposed on September 15, 2005, and the Notice of Deposition included a request for his complete file, which contained a "Chronology" prepared by Attorney Patrice Boyes, and which Plaintiff claims contains her mental impressions. Defendant also seeks what it refers to as Attorney Boyes' Editorial Comments, written on Defendant's responses to Plaintiff's Requests for Admissions, which DePew stated at his deposition had been in his file, but had been removed and was not otherwise produced. Plaintiff opposes producing either item in its un-redacted form because it is work product.

    At issue is the interplay between the long standing protections afforded attorney

work product, codified at Rule 26(b)(3)[1], and Rule 26(a)(2)(B), as amended in 1993, which requires that an expert witness disclose in a written report "the data or other information considered by the witness in forming the opinions." As the cases cited by both parties recognize, there is a split among the courts as to whether work product is an exception to the discoverability of expert information or whether it, too, must be disclosed if used by an expert in forming his opinion.

The Court has read the cases cited by both parties and agrees with the reasoning of Judge Killian, as set forth in <u>In re McRae</u>, 295 BR 676 (Bankr. N. D. Fla. 2003), that there is no such exception noted in Rule 26 or in the Advisory Committee Notes accompanying the 1993 amendments to the rule, and the plain meaning of Rule 26(a)(2)(B) requires that all information used by expert witnesses in forming their opinions should be disclosed.

Indeed, the Advisory Committee Notes state:

> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions-whether or not ultimately relied upon by the expert- are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

The reference to "otherwise protected" clearly encompasses work product. Such an expansive interpretation is in accord with the general purposes of the 1993 amendments to Rule 26, which were to require the disclosure of basic information

---

[1] "[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney of other representative of a party concerning the litigation."

*Case No: 1:05-cv-00094-SPM-AK*

without the necessity of formal discovery requests to facilitate the development of cases for trial and to allow for a more informed decision about settlement. (See Advisory Committee Notes, 1993 Amendments to Rule 26).

As United States Magistrate Judge Nicols noted in TV-3, Inc. v. Royal Insurance Company, 193 FRD 490, 492 (S.D. Miss. 2000), a case cited by Judge Killian in McRae, this interpretation of the rule is also consistent with the trend to "keep expert opinion testimony fair, reliable and within the bounds of reason" at a time when an attorney can hire an expert on any subject to say anything he wants him or her to for the right price. In those instances where information considered by an expert in forming an opinion is an attorney's instructions as to the opinion to be formed, this information should be discoverable. As Judge Nicols noted in his opinion, where there has been no such "marching orders" given to an expert, the disclosing party has nothing to fear. Nothing in this opinion should be read to imply that any such instruction has been given here to Dr. DePew. The Court does not know what the nature is of the information withheld by the Plaintiff. The Court is simply persuaded that the plain meaning of Rule 26, as further clarified in the Advisory Committee Notes to the 1993 amendments to Rule 26, requires full disclosure of all information used by an expert witness without regard to privilege or work product protections.

Defendant also argues that while Dr. DePew acknowledged that he used the chronology to "get an idea of the events surrounding the case," (doc. 58, exhibit 1, p. 3), this consideration is not encompassed by the rule because it did not actually influence his opinion. In the Advisory Committee Notes cited above, this argument was specifically foreclosed in favor of disclosure of any information "whether or not ultimately

relied upon by the expert," which this Court construes as including information whether or not it was pertinent to the expert's ultimate conclusion. Thus, the Court finds that the work product exception to discovery does not apply to information used by an expert in forming his opinion. The Court further finds that the Chronology is information considered by the expert within the meaning of the rule and should be disclosed in its un-redacted form.

Defendant also argues that the Editorial Comments sought by the Plaintiff were notes made on the Second Amended Complaint, not written on Defendant' Responses to Plaintiff's Request for Admissions, and were also not used in the formation of an opinion by Dr. DePew, but as a means for him to glean what was and was not at issue in the complaint. At his deposition, Dr. DePew refers to this document as "a document that discussed the admissions by the city that had some of Ms. Boyes's notes on it that was removed from my file." (Doc. 58, Exhibit 1, p. 7). Later he referred to it again as "commentary by the attorney typed in after almost each of the admissions." (Doc. 58, Exhibit 1, p. 8). According to Dr. DePew he did not have the document in question with him at his deposition because it had been removed from his file, so the document in question was not, as far as the Court can determine from the deposition excerpts provided to it, marked as an actual exhibit. Thus, the Court will leave it to the parties to decide whether the document referenced by Dr. DePew was a response to a discovery request or the amended complaint, but whatever pleading it is, it is not protected as work product and shall be produced in its un-redacted form. Further, Dr. DePew shall make himself available for a second deposition for the limited purpose of questioning him as to both the Chronology and the Editorial Comments. If the parties can

accomplish this line of questioning by other means, such as written deposition questions, they are free to utilize whatever means provided by the Federal Rules of Civil Procedure, for achieving this end, *i.e* this order is not to be read as to *require* Dr. DePew's deposition.

2. <u>A letter from Jeffery Kropp to Larry Watson concerning whether Plaintiff should sell its assets to Anderson-Columbia and at what price.</u>
   (Deposition Exhibit 246 (redacted)).

Jeffery Kropp is a financial consultant for Watson Construction and Larry Watson is the owner. Plaintiff contends that this letter in its un-redacted form should have been produced in response to its Second Request for Production of Documents No. 2 and the Subpoena Duces Tecum served on Jeffery Kropp and was prepared in Kropp's ordinary course of rendering business advice and not in anticipation of litigation or at the request of counsel.[2] Defendant also wants the depositions of Kropp and Watson resumed so that they may be questioned on the particulars of this correspondence.

Plaintiff argues that the Kropp letter was written while the current litigation was pending and includes a paragraph entitled "Lawsuit Against City of Gainesville." Plaintiff contends that Kropp, as a financial consultant, provided his opinion about the pending lawsuit, and as such the letter contains mental impressions and strategy pertaining to this litigation. As work product, Plaintiff argues that Defendant has the burden of showing substantial need for this letter or undue hardship, but has failed to make this showing. The Court agrees.

---

[2] Defendant corrected its assertion that the letter was not included on a privilege log and concedes that the letter was included in a log served upon the City on August 26, 2005. (Doc. 59).

The fact that this letter was drafted by a consultant to the owner of Watson Construction after this litigation had commenced and contains a paragraph specifically referencing this lawsuit is sufficient evidence of work product to convince this Court that it is subject to work product protections. Defendant asserts that "discovery on the contemplated sale of Watson Construction's assets *could* be telling on issues of liability and damages..." and "*...may* reveal that the City's alleged actions *may* have had no effect on Plaintiff's business..." and "*...may* bear on standing issues...." (Doc. 56, p. 7). (emphasis added). The tenuous nature of Defendant's argument for this discovery does not, in the opinion of the undersigned, rise to the level of "substantial need" or "undue hardship" to warrant production of this un-redacted letter.

3. <u>Conversations between Larry Watson and Others</u>

Defendant seeks to reopen the depositions of Larry Watson, Ernie Windsor, Coolidge Davis, and Gary Yelvington to inquire of them the substance of a conference call made on August 16, 2001, which was referenced in an invoice produced during discovery. Windsor and Watson are representatives and/or owners of Watson Construction, Yelvington was the party interested in purchasing Watson Construction Company, and Davis was the realtor involved in the deal. Defendant claims that the substance of the conference call concerns the extension of the contract deadline between Watson and Yelvington and Defendant's appeal of the state court injunction against it.

Plaintiff claims that attorney Dick Jones was involved in the conference call, who at the time represented Yelvington, and the parties to the call shared a common defense and are therefore entitled to a shared defense privilege. Plaintiff explains that

Yelvington was a party to this lawsuit before it was removed, and Davis has now filed suit against the City for damages arising from the facts present in this lawsuit.

Defendant contends that there is no privilege attached to this conversation because Dick Jones did not represent Plaintiff, Yelvington dismissed his claims in the present lawsuit, and a third party, Coolidge Davis, was present during the call.

"[I]n deciding whether shared information should be protected from disclosure to the third party, one must first answer the questions whether the communication was 'made and maintained in confidence under circumstances where it is reasonable to assume that disclosure to third parties was not intended' and whether the information was exchanged 'for the limited purpose of assisting in their common cause.'" Visual Scene, Inc. v. Pilkington Brothers, PLC., 508 So.2d 437, 441 (DCA. Fla. 1987) *citing* In re LTV Securities Litgation, 89 FRD 595 (N. D. Tex. 1981).  In Visual Scene the court found such common cause between plaintiffs and defendants citing cases finding a joint defense between not only co-defendants in the same action, but co-parties to potential litigation, defendants sued in separate actions, and where the parties are nominally aligned on the same side, but have some adverse interests. *Id.*, at 440.  Thus, it is not necessary that the parties be co-parties in the same cause for there to be a joint defense for purposes of maintaining the privilege.  However, it is "[a]xiomatic to the joint defense doctrine ... the existence of multiple parties.  *A fortiori*, for this doctrine to apply there must also be multiple attorneys."  In re Indiantown Realty Partners, Ltd., 270 BR 532, 539 (Bkr. S. D. Fla. 2001).  The parties to the conference call were Attorney Dick Jones, his client (Yelvington), two unrepresented business partners (Watson and Windsor) in a contractual relationship with Yelvington, and the realtor (Davis), also

unrepresented, who was brokering the real estate deal. Under this scenario the only privileged communications were between Jones and Yelvington, which were waived by the presence of the unrepresented third parties Watson, Windsor, and Davis. For this grouping to constitute a shared defense it was necessary that counsel for the other parties be present. Presumably Attorney Boyes represented Watson at this time, and if legal defense strategies were indeed being discussed it is more than probable that she would have been included in the call.

Thus, the Court does not find that the joint defense doctrine protects the communications made during the conference call at issue, and Defendant may inquire of these persons the substance of that call by either re-deposing them or whatever other means deemed necessary, as provided by the rules.

4. <u>Documents withheld by Plaintiff's Counsel in Possession of Coolidge Davis</u>

Non-party Davis was served a subpoena duces tecum and withheld two documents responsive to the subpoena, which were a letter from Attorney Jones (Yelvington's attorney) to Davis marked "Personal and Confidential," and a letter to Davis from Attorney Boyes (Watson's attorney). The letters were withheld on grounds of attorney-client privilege. Defendant seeks production of these documents and the re-opening of Davis' deposition to inquire about them.

In response to the present motion, Plaintiff asserts that it has no custody or control over documents in Davis' possession and any assertion of the privilege by Davis' attorney is between Davis and his attorney. Alternatively, Plaintiff adds that the letters are subject to the joint defense privilege.

Plaintiff is correct that the Court cannot compel documents from it that are in the

possession, custody and control of another non-party. Rule 45, Federal Rules of Civil Procedure, provides the proper procedure for obtaining compliance with a subpoena. This request is denied.

5. <u>Audit Response Letter from Attorney Boyes to William O'Byrne, CPA for Plaintiff</u>

At issue is an audit response letter dated March 15, 2002, from Attorney Boyes to William O'Byrne, Plaintiff's accountant, providing information about pending claims and litigation and the impact thereof on Plaintiff's financial condition. O'Byrne testified that this information was gathered as part of his annual audit, not as part of the litigation itself, and he was never instructed to treat the information as work product. The letter, in apparently un-redacted form, was produced, but when O'Byrne was questioned about it, he was instructed not to answer on grounds of work product privilege.

Defendant contends that the information is not work product because it was not prepared for an attorney nor was it created in anticipation of litigation, it was created for O'Byrne's business purposes, and further, it was not objected to during production, such that any privilege, if it attached, was waived.

Plaintiff claims that the information was clearly work product because Attorney Boyes was asked to give her mental impressions and legal opinions. Plaintiff does not address the inadvertent disclosure of this document, except to state that it did not intentionally waive any rights to claim work product protection.

Having read the letter in question, the Court is of the opinion that it is clearly work product. It contains the mental impressions of Plaintiff's attorney in a letter prepared for the party's representative (his accountant) and concerns litigation. The issue then before the Court is whether its production, made without objection by counsel,

constitutes a waiver of the work product doctrine. Neither party adequately addresses this issue, which the Court finds determinative.

The federal courts are split on whether inadvertent disclosure constitutes waiver of the work product doctrine, and this Court was unable to find Eleventh Circuit precedent on the issue. The United States District Court of the Southern District of Florida elected to follow the line of cases that held that the inadvertence of counsel should not operate to waive a rule of privilege held by and for the benefit of the client. Georgetown Manor, Inc. v. Ethan Allen, Inc., 753 F.Supp. 936 938 (S.D. Fla. 1991). The district court in the Middle District of Florida decided a few months earlier that under federal or Florida law, a test should be applied to the facts of each case, and under the circumstances of that particular case, inadvertent disclosure constituted waiver of the privilege. Ray v. Cutter Laboratories, 746 F. Supp. 86, 87-88 (M. D. Fla. 1990). The court in Ray cited Hartford Fire Insurance Co. V. Garvey, 109 FRD 323 (N. D. Cal. 1985), for the majority rule in federal court that five factors should be considered before determining whether waiver has occurred. These factors are: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Id.*, at 332.

Florida state courts have not followed either Georgetown or Ray and instead apply a "relevant circumstances test," which employs the same five step analysis set forth in Hartford. See Abamar Housing & Development, Inc. v. Lisa Daly Lady Decor, Inc., 698 So. 2d 276, 279 (Fla. 3d DCA 1997); General Motors Corp. v. McGee, 837 So. 2d 1010 (Fla. App. 4 Dist. 2002).

This Court is of the opinion that the better practice in determining this issue should be to apply the factors adopted by the majority of federal courts and the state courts in Florida to the particular circumstances in question rather than to adopt any bright line rule of law.

In the present case, the subpoena duces tecum, which prompted production of this document, was served on the accountant on July 6, 2005.[3] O'Byrne's deposition was held on September 22, 2005. No objections were made to any of the document requests, and the letter was produced and marked as Deposition Exhibit 209. Plaintiff had over two months to produce documents responsive to the subpoena such that production should not have been rushed or overwhelming and care could have been taken to review what was being produced. According to Defendant, the same letter had been produced and discussed two weeks earlier at the deposition of Larry Watson. During the two weeks after Watson's deposition and before O'Byrne's deposition, Plaintiff did not file any motions seeking any relief concerning this document on grounds of inadvertent disclosure or any other ground. Even now in response to Defendant's motion to compel, Plaintiff does not request any relief from the Court concerning this document, except to deny the Defendant's motion to compel. Plaintiff does not ask that any evidentiary restrictions be imposed upon its further use, does not seek to have the document sealed, which is attached to Defendant's motion and now a matter of public record, and does not ask to have the document returned to it. Plaintiff seems to take no

---

[3] Most of the facts regarding this production are gleaned from Defendant's motion since Plaintiff does not address this issue, except to say that its production of the letter was not intentional.

real issue with the document being "out of the bag," but it wants to restrict any additional inquiry about it from the parties to it that may enlighten or explain it further. This, in the Court's opinion, would be unfair to Defendant (and perhaps to Plaintiff) and certainly to the finders of fact called upon to ultimately decide this case. See <u>Weil v. Investment/Indicators, Research and Management, Inc.</u>, 647 F.2d 18, 24 (9th Cir. 1981) ("When the privilege holder's conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.") Therefore, the Court finds that Plaintiff, who had the burden of asserting and protecting the privilege, has failed to show that any of the factors against finding waiver in the context of an inadvertent disclosure of work product weigh in its favor. Defendant may inquire further by re-deposing Watson and O'Byrne, or by other means provided by the rules, as to the contents of said letter.

6. <u>Letter dated August 22, 2001, from Attorney Jones to Attorney Boyes</u>

      This letter is purportedly the subject of a subpoena served upon Yelvington, who is not a party to this case. His attorney, Dick Jones, prepared a privilege log noting the existence of this letter and asserting attorney-client privilege with regard to it. Plaintiff asserts that it has no control over Yelvington's files, but even if it did this letter would be privileged under the joint defense privilege. The Court agrees that this, too, appears to be an issue that should have been brought pursuant to Rule 45, and as to Yelvington and his attorney. The Court cannot compel a party to produce documents which are not within its possession, custody or control.

7. <u>Attorney Fees and Costs</u>

Both parties seek fees and costs associated in filing and defending the present motion.  Since the Court has herein granted the motion in part, thereby finding both parties substantially justified in taking some of their positions with regard to these issues, it also finds that no award of fees or expenses is warranted to either party.

Accordingly, it is

**ORDERED:**

Defendant's Motion to Compel (doc. 56) is **GRANTED IN PART**: (1) that Plaintiff shall produce the un-redacted forms of documents referred to as the Chronology and Editorial Comments referenced above within ten days of this date, and make available for additional deposition testimony Dr. DePew, if necessary, as soon as practicable, for further inquiry about these documents; (2) that Defendant may re-depose or otherwise inquire of the parties to the conference call referenced above the substance thereof; (3) that Defendant may re-depose or otherwise inquire of William O'Byrne and Larry Watson as to the substance of the letter referenced above.  The motion is **DENIED IN ALL OTHER RESPECTS**.

**DONE AND ORDERED** this _**26**[th]_  day of January, 2006

s/ *A. Kornblum*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**